UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

BRIAN BREWER,

    Plaintiff,

-v-

CITY OF DAYTON, et. al.,

    Defendants.

Case No. 3:11-cv-307

Judge Thomas M. Rose

___

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. # 12), AS TO PLAINTIFF'S FMLA CLAIM AND REMANDING THE ACTION TO THE MONTGOMERY COUNTY COURT OF COMMON PLEAS FOR ADJUDICATION OF REMAINING STATE LAW CLAIMS.**

___

Pending before the Court is Defendants' Motion for Summary Judgment. Doc. 12. Defendants assert that Plaintiff Brian Brewer cannot prevail on his claim that Defendants interfered with Plaintiff's rights under the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et. seq.* ("FMLA"). Because Plaintiff offered no evidence that Defendants interfered with his FMLA rights, the Court will grant Defendants' motion as to that cause of action. The Court declines to exercise supplemental jurisdiction over the remaining pendant state claims pursuant to 28 U.S.C. § 1367.

**I.**    **Background**

Plaintiff Brian Brewer ("Plaintiff") was employed by the City of Dayton ("the City") from 2004 until April 29, 2011, as a heavy-equipment mechanic. At all times from August 2008 through April 29, 2011, Plaintiff was employed on the "light side" of the heavy-equipment shop.

As a light-side, heavy-equipment mechanic, Plaintiff was required to maintain the City's light equipment.

On March 20, 2008, Plaintiff injured his left knee on the job. Thereafter, Plaintiff underwent two arthroscopic knee surgeries. Unfortunately for Plaintiff, the arthroscopic surgeries did not entirely resolve his knee issues. On August 11, 2010, Plaintiff underwent partial knee replacement surgery. (Brewer Dep. 29). Plaintiff was originally scheduled to return to work on November 30, 2010. However, Plaintiff experienced inflammation in his left knee and required a second surgery on December 15, 2010. (Brewer Aff. at ¶ 10; Doc. 21-7). Consequently, Plaintiff's physicians instructed that he was unable to work until January 30, 2011. (Id.). Plaintiff provided the City with the physician's order not to work until January 30, 2011, and notified the City of his second surgery. (Id.). The City demanded Plaintiff return to work without restriction by December 27, 2010. (Brewer Aff. at ¶ 11; Doc. 21-8). Plaintiff reported to work on December 27, 2010, but was not cleared by his physicians to work. (Id.) Plaintiff was instructed to go home. (Id.; Stovall Dep. 10-11).

Plaintiff was re-evaluated on January 24, 2011. Consequently, Plaintiff was instructed to stay off work until April 1, 2011. (Brewer Aff. at ¶ 12; Doc. 21-9). Plaintiff was again instructed by the City to return to full duty by April 1, 2011. (Brewer Aff. at ¶ 12; Doc. 21-10). Plaintiff was re-examined on March 16, 2011, and was cleared to return to work with restrictions on April 1, 2011. (Brewer Aff. at ¶ 12).

Plaintiff reported to work on April 1, 2011, with restrictions prohibiting kneeling or squatting, and lifting more than twenty pounds. (Brewer Dep. 56-57). Plaintiff was advised that the restrictions were unacceptable, and sent home. On or about April 15, 2011, Plaintiff provided the City with a medical certification to return to full duty on May 17, 2011. However,

2

on April 28, 2011, Plaintiff was allegedly terminated for being absent without leave—a violation of the City's civil service rules. (Brewer Aff. at ¶ 16).

During the period at issue, Plaintiff was entitled to injury leave and ninety-days' leave without pay, under his collective bargaining agreement with the City. (Grooms Dep. 17-18; Doc. 17-2). The duration of injury leave entitled to Plaintiff was based on the step-classification of Plaintiff under the collective bargaining agreement. (Id.). However, the collective bargaining agreement was ambiguous as to how injury leave was calculated when a relapse from a previous injury occurred. (Grooms Dep. 15-19). Pursuant to the collective bargaining agreement's exclusive, mandatory grievance procedure, Plaintiff filed a grievance through the union challenging the City's interpretation of the agreement. (McKenzie Aff. at ¶¶ 7-8). The grievance proceeded to the fourth and final step of the grievance process, where it was determined the correct interpretation of the agreement had been applied, and that Plaintiff had received all of the contractual leave he was entitled. (Id.). Plaintiff never appealed the final determination from the grievance procedure to arbitration. (Id.). According to the collective bargaining agreement grievance determinations that are not appealed are final and binding on the parties to the contract. (Id.).

On August 8, 2011, Plaintiff filed a complaint in the Court of Common Pleas, Montgomery County, Ohio, asserting claims of disability discrimination in violation of Ohio Revised Code § 4112, Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. sea*, and retaliation in violation of Ohio Revised Code §4112. Defendant removed that action to this Court and has filed a motion seeking summary judgment on all claims that is now ripe for the Court's consideration.

**II.     Summary Judgment Standard**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law.  Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Alternatively, summary judgment is denied "[I]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits that it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving

4

party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the Court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The analysis now turns to the merits of Defendants' motion for summary judgment.

**III.  Analysis**

Plaintiff asserts a claim against Defendants for interference with rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et. seq.*[1] Plaintiff alleges in his complaint that he did not receive all entitled leave under his collective bargaining agreement, and that by not providing his leave in a specified order Defendants interfered with Plaintiff's rights under the FMLA.

FMLA regulations provide that, subject to a medical certification, an eligible employee is limited to twelve weeks of leave in a twelve-month period. 29 C.F.R. § 825.200(a)(1)-(4). An

---

[1] Plaintiff proceeded solely on an FMLA interference claim. Doc. 21 at p. 24.

eligible reason for FMLA leave is a "serious health condition" that makes the employee unable to perform the essential functions of his job. *Id.* "Serious health condition" is defined to include a period of incapacity, including the inability to work, for more than three calendar days. 29 C.F.R. § 825.114(a).

To prevail on a FMLA interference claim, also known as an entitlement claim, plaintiff must demonstrate: (1) he is an eligible employee; (2) the defendant is an "employer"; (3) plaintiff was entitled to leave under the FMLA; (4) plaintiff gave the defendant notice of an intention to take leave; and (5) defendant denied plaintiff FMLA benefits to which he was entitled. *Cavin vs. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). In the instant case, the parties only dispute the fifth element in the analysis of Plaintiff's interference claim.

The fifth element of an FMLA interference claim has been expanded to include circumstances where an employer somehow has used leave against the employee in an unlawful manner, as provided either in the statute or regulation. *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 449 (6th Cir. 2007). An involuntary-leave claim is a type of interference claim. *Id.* Under the involuntary-leave theory, the employer forces the employee to take FMLA leave "when the employee does not have a 'serious health condition' that precludes [him] from working." *Id.* The employee's claim ripens once the employee seeks FMLA leave at a later date, and it is no longer available. *Id.*

In the instant case, it is undisputed that Plaintiff was provided the twelve weeks of leave required in a twelve-month period under the FMLA. (Doc. 21 at p. 24; Brewer Aff. ¶ 18; Brewer Depo. at pgs. 32-33; Doc. 21-14). Plaintiff instead pursues his claim under the involuntary-leave theory, a subset of an FMLA interference claim. Plaintiff asserts that Defendants forced him to take FMLA leave when he did not require it by failing to provide Plaintiff with all entitled leave

6

under his collective bargaining agreement, and by running Plaintiff's contractual leave concurrent with his FMLA leave. Plaintiff contends that Defendants' actions deprived him of FMLA leave when he needed it at a later date.

Defendants assert that Plaintiff was provided all entitled leave, under both the FMLA and his collective bargaining agreement. Defendants further assert that at all times Plaintiff was unable to work from August 2010 until April 1, 2011. Finally, Defendants assert that while they did run Plaintiff's contractual and FMLA leave concurrently, they did so in accordance with federal law.

Plaintiff concedes that he was unable to work in any capacity from August 2010 through April 1, 2011. (Brewer Depo. at p. 33; Doc. 21 at pgs. 4-5). Plaintiff exhausted FMLA leave on January 12, 2011. (Doc. 21-10; Doc. 21-14). Therefore, at all times when Plaintiff was on FMLA leave Plaintiff was unable to perform the essential functions of his job and was suffering from a serious health condition. Consequently, Plaintiff was not forced to take FMLA leave in the absence of a serious health condition.

Plaintiff attempts to recast his claim by asserting that Defendants did not provided him with all entitled leave under his collective bargaining agreement, and that Defendants impermissibly ran Plaintiff's FMLA leave concurrent with leave he was entitled to under his collective bargaining agreement. Specifically, Plaintiff argues that Defendants' should have provided his leave in the following sequential order: injury leave with pay; twelve weeks of FMLA without pay; and ninety-days' leave without pay. Plaintiff claims that had he been given all of the injury leave he was entitled to under the collective bargaining agreement, and had Defendants' granted his various leave entitlements sequentially, Plaintiff would have had sufficient leave to carry him past May 17, 2011, when he would have returned to full duty.

7

Plaintiff contends that because Defendants did not provide leave in the aforementioned order, Plaintiff was forced to take FMLA leave when he did not need it, and was later denied FMLA leave when he did need it.

Typically contractual disputes between an employer and a member of a bargaining unit are governed by § 301 of the Labor Management Relations Act of 1947 ("LMRA"). 29 U.S.C. § 185. However, the LMRA amended the National Labor Relations Act ("NLRA") to exclude political subdivisions from the purview of the act. *Lander v. Montgomery Cnty. Bd. of Comm'r*, 159 F. Supp. 2d 1044, 1053 (S.D. Ohio 2001); 29 U.S.C. § 152(2). The instant case involves a Defendant that is a political subdivision, and thus is not an "employer" for purposes of the NLRA. Therefore, state labor law, and not the LMRA, governs the instant case between the political subdivision and its employee. *Id.;* R.C. § 4117.10(A). Under state labor law, it is axiomatic that where a collective bargaining agreement contains mandatory grievance and arbitration provisions that the enumerated procedures are the sole remedies available to the parties to the contract. *Id.*

Plaintiff filed a grievance against the City alleging that he had not received all entitled leave under his collective bargaining agreement, and that the bargaining agreement was incorrectly interpreted. (McKenzie Aff. II at ¶¶ 5-8). The grievance went to the fourth and final step of the grievance process, and was resolved against Plaintiff. (Id. at ¶ 8). Plaintiff never filed an appeal to have his claim arbitrated. (Id.). Pursuant to the terms of Plaintiff's collective bargaining agreement, the grievance was deemed resolved against the grievant. (Id.)

Plaintiff's failure to appeal the determination of the grievance proceeding to arbitration resulted in Plaintiff being deemed to have received all entitled leave under his contract. Because the grievance procedures were binding on the Plaintiff and the City, Plaintiff is now estopped

8

from arguing that he did not receive all the leave he was entitled to under his collective bargaining agreement.

Moreover, Plaintiff's claim that Defendants were not permitted to run his contractual leave entitlements concurrent with his FMLA leave is erroneous. An employer may elect to run FMLA leave concurrently with other forms of leave provided by the employer. *See* 29 C.F.R. § 825.207(a); *Allen v. Butler Cnty. Comm'r*, 331 Fed. App'x. 389, 393 (6th Cir. 2009). Consequently, Plaintiff has failed to provide any evidence to support an involuntary-leave claim against Defendants.

### IV. Conclusion

Because Plaintiff has failed to provide evidence that could allow a jury to determine that Defendants interfered with Plaintiff's FMLA rights, or forced Plaintiff to take FMLA leave involuntarily, Defendants' Motion for Summary Judgment as to that cause of action is **GRANTED**. Pursuant to 28 U.S.C. § 1367, the Court **ORDERS** that this case be remanded to the Montgomery County Court of Common Pleas for adjudication of the pendant state claims that this Court declines to entertain.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, March 12, 2013.[2]

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[2] The Court acknowledges the valuable contribution and assistance of judicial extern Curtis Moore in drafting this opinion.